OPINION
{¶ 1} Plaintiff-appellant, Noah L. Wright, representing himself, appeals from the judgment of the Franklin County Court of Common Pleas granting a motion filed by defendant-appellee, Margarette T. Ghee, chairperson of the Ohio Adult Parole Authority ("OAPA"), to dismiss his complaint for declaratory and injunctive relief pursuant to Civ.R. 12(B)(6).
{¶ 2} According to his complaint, during December 1992, appellant, then represented by counsel, entered guilty pleas to two counts of rape in the Scioto County Court of Common Pleas. His 12-year-old daughter was the victim.[1] As part of a plea agreement, a third count that alleged complicity to rape by another was dismissed. The trial court sentenced appellant to an indeterminate sentence of 7 to 25 years in prison and a fine on each conviction, with the prison terms to run concurrently. He is serving the term of imprisonment at the Chillicothe Correctional Institution.
{¶ 3} Appellant also alleged that, during April 1997, he appeared before an OAPA hearing panel for parole consideration. Parole was denied and the matter was continued 62 months for further consideration. He objected in his complaint to the length of the continuance and reference by OAPA to his failure to participate in institutional programs he characterized as voluntary. Appellant alleged that he was wrongfully denied parole in violation of his plea agreement.
{¶ 4} Appellant further complained that, during a "half-time" review of his parole eligibility conducted in October 1999, the OAPA improperly applied new parole guidelines, adopted March 1, 1998, instead of those that were in effect at the time he entered his guilty pleas. He claimed that the guidelines in effect at the time of his conviction were significant to his decision to accept the plea agreement offered him.
{¶ 5} Additionally, appellant alleged that, even under its "new guidelines," the OAPA incorrectly assessed the seriousness of his offense and risk of recidivism by placing him in Category 10, Risk 1 instead of Category 8, Risk 1 for the purpose of determining the range of time he should serve prior to release on parole within the limits of his 7 to 25 years indeterminate sentence. Those ranges, according to appellant's allegations and the exhibits annexed to his complaint, are 120 to 180 months for Category 10, Risk 1 as opposed to 60 to 84 months for Category 8, Risk 1.
{¶ 6} Appellant sought a declaratory judgment that the OAPA practices and procedures outlined in his complaint violated his rights to due process and equal protection under the United States and Ohio Constitutions, the ex post facto clause of the United States Constitution, and the separation of powers and delegation of authority provisions of the United States and Ohio Constitutions. He also contended that the actions of the OAPA constituted a breach of his plea agreement, a contract with the state, requiring that the agreement be declared null and void and that he be immediately released. The actions of the OAPA, according to the complaint, required him to serve a longer period of incarceration than would have been enforced, had guidelines in effect at the time of his guilty pleas been applied or had he been placed in a lesser offense and risk category under the "new guidelines." Appellant prayed that OAPA should be enjoined from placing him in a parole consideration category other than Category 8, Risk 1 and from considering either the allegations in his original indictment not specifically addressed by his guilty pleas or the level of his participation in institutional programs. He also demanded that the OAPA should be required to apply guidelines in effect at the time of his conviction and to provide release consideration according to those guidelines.
{¶ 7} The trial court granted the motion by the OAPA to dismiss appellant's complaint, pursuant to Civ.R. 12(B)(6), in a decision and judgment entry journalized December 12, 2001. The court also denied 15 other pending motions, including cross-motions for summary judgment, as having been rendered moot by the dismissal. Appellant filed a timely notice of appeal from the judgment and presents five assignments of error for this court's consideration, as follows:
{¶ 8} "ASSIGNMENT OF ERROR ONE (1):
{¶ 9} "The trial court errored [sic], and abused its discretion, when it failed to apply any meaningful consideration to Appellee's obligations under bilateral contractual conditions.
{¶ 10} "ASSIGNMENT OF ERROR TWO (2):
{¶ 11} "The trial court erred when it dismissed Appellant's Complaint for `failure to state a claim.'
{¶ 12} "ASSIGNMENT OF ERROR THREE (3):
{¶ 13} "The trial court erred when it failed to address each of Appellant's issues presented for Review.
{¶ 14} "ASSIGNMENT OF ERROR FOUR (4):
{¶ 15} "The trial court erred when it ruled contrary to both established law and facts.
{¶ 16} "ASSIGNMENT OF ERROR FIVE (5):
{¶ 17} "The trial court erred when it failed to recognize that the application of the Appellee/APA's `New' parole guidelines violates the Ex Post Facto Clauses."
{¶ 18} For the reasons that follow we overrule all five assignments of error and affirm the judgment of the trial court. We will first outline the general standards followed in reaching our decision, then address the assignments of error in the order presented, except that the second, fourth and fifth assignments of error, being viewed as interrelated, will be discussed together.
{¶ 19} An appeal from the dismissal of a complaint pursuant to Civ.R. 12(B)(6), presents this court with a question of law that we review de novo, independent of the decision by the trial court. State ex rel. Drake v. Athens Cty. Bd. of Elections (1988), 39 Ohio St.3d 40. We must presume all the factual allegations in the complaint to be true and we must make all reasonable inferences in favor of appellant as the non-moving party. City of Cincinnati v. Beretta U.S.A. Corp.,95 Ohio St.3d 416, 2002-Ohio-2480, at ¶ 5. If there is a set of facts, consistent with the complaint, that would justify the relief prayed for, a trial court may not grant a motion to dismiss for failure to state a claim. Id., citing York v. Ohio State Hwy. Patrol (1991),60 Ohio St.3d 143, 145. In reviewing a trial court dismissal based upon the insufficiency of the complaint, this court will look at each claim separately. Beretta, at ¶ 6. We will not, however, consider unsupported conclusions that may be included among, but not supported by, the factual allegations of the complaint, because such conclusions cannot be deemed admitted and are not sufficient to withstand a motion to dismiss. Grange Mutual Casualty Co. v. Klatt (Mar. 18, 1997), Franklin App. No. 96APE07-888, citing State ex rel. Hickman v. Capots (1989),45 Ohio St.3d 324.
{¶ 20} A declaratory judgment action is a civil proceeding that provides a remedy in addition to other legal and equitable remedies. Walker v. Ghee (Jan. 29, 2002), Franklin App. No. 01AP-960, citing Aust v. Ohio State Dental Bd. (2000), 136 Ohio App.3d 677, 681. "The essential elements for declaratory relief are (1) a real controversy exists between the parties, (2) the controversy is justiciable in character, and (3) speedy relief is necessary to preserve the rights of the parties." Aust, at 681. Here, we accept that speedy relief is necessary because appellant is presently serving his prison term. See Davis v. Ghee (Sept. 18, 2001), Franklin App. No. 01AP-280. The only remaining reasons that might support dismissal of this declaratory judgment action without considering the merits are if no justiciable issue or actual controversy exists between the parties or if a declaratory judgment will not terminate the uncertainty or controversy. Wilburn v. Ohio Dept. of Rehab. and Corr. (Nov. 27, 2001), Franklin App. No. 01AP-198. For purposes of a declaratory judgment action, a "justiciable issue" requires the existence of a legal interest or a right, and a "controversy" exists where there is a genuine dispute between parties who have adverse legal interests. Id.
{¶ 21} Appellant acknowledges that he has no constitutional right to parole, but argues in support of his first assignment of error that he cannot now be deemed to have "knowingly, intelligently, and voluntarily" entered into his plea agreement because he did not foresee that his parole might be considered under "terms, laws, and conditions" different from those in place at the time he entered his guilty pleas. He offered a similar argument before the Court of Appeals of Ohio, Fourth Appellate District, in a recent appeal from the denial by the Scioto County Court of Common Pleas of his Crim.R. 32.1 motion to withdraw his guilty plea. In that case the court held that "Wright did enter into a plea agreement with the State. But Wright's plea agreement did not include a promise to be released after seven years. Rather, the plea agreement consisted solely of Wright's promise to plead guilty to two counts of rape and the State's promise to drop the remaining charge of aiding and abetting another in committing rape." State v. Wright, Scioto App. No. 01CA2804, 2002-Ohio-3138, at ¶ 16. The court also noted it had ruled in an earlier decision that appellant knowingly and voluntarily entered his guilty plea when it denied his motion to reopen his direct appeal. Id. at ¶ 11, citing State v. Wright (July 29, 1994), Scioto App. No. 93CA2110.
{¶ 22} Appellant detailed his understanding of the plea agreement in paragraph 18 of his complaint, stating:
{¶ 23} "* * * In exchange for * * * entering a plea of guilty, he would receive the following considerations:
{¶ 24} "(A) Count three (3) of the original indictment would be dropped if * * * [he] would agree to enter a plea of guilty to an amended indictment of two (2) counts of rape;
{¶ 25} "(B) Upon entering a plea of guilty, counts one (1) and two (2) of the indictment would be served concurrently;
{¶ 26} "(C) Upon completion of * * * [his] minimum [term] * * * less good time credit * * * [he] would be afforded consideration for parole under the most favorable light possible, as per the criteria of the parole board guidelines that were in operation at the time of his sentencing;
{¶ 27} "(D) * * * [S]ubsequent [to] entering of a plea of guilty, * * * [his] four (4) minor children * * * in custody of the Scioto County Children's Services * * * would be released to the custody of their mother;
{¶ 28} "(E) * * * [U]pon * * * acceptance of the plea agreement * * * [his] wife and daughter (the alleged victim) would not be charged and prosecuted for several purported crimes * * * for recanting their original allegations (on more than one occasion)." (Emphasis sic.)
{¶ 29} The primary aspect of his understanding of the plea agreement that appellant contended in his complaint was breached by appellee involved his expectations for parole consideration as quoted above. A plea agreement, contractual in nature, is binding and subject to contract law standards. Walker, citing State v. Graham (Sept. 30, 1998), Franklin App. No. 97APA11-1524. This court has in several recent decisions considered whether the inmates in those cases alleged a breach of their respective plea agreements in a manner sufficient to present a justiciable issue or actual controversy and, thus, to withstand a Civ.R. 12(B)(6) motion to dismiss.
{¶ 30} In Walker, the prisoner did not allege an express promise that the parole guidelines in effect at the time of his guilty plea would be applied, nor did he allege that he was promised release upon the expiration of his minimum sentence. We upheld the trial court's dismissal because Walker had simply averred, as has appellant at paragraph 26 of his own complaint, that by virtue of the application of the revised guidelines he "will be forced to serve a more severe sentence than what he understood at the time of entering his plea agreement." (Emphasis sic.) Id. Assuming without deciding that the OAPA was bound by the plea agreement between Walker and the prosecutor in that case, this court held that his "unilateral expectation that he would be released early on parole pursuant to the parole guidelines in effect at the time of sentencing is insufficient to establish a term of his plea bargain agreement or to contravene the authority and discretion accorded the OAPA in deciding when to grant parole." Id.
{¶ 31} In Budd v. Kinkela, Franklin App. No. 01AP-1478, 2002-Ohio-4311, we followed our holding in Walker and stated: "[A]n inmate has no contractual right to have the parole guidelines in effect at the time of his sentencing apply at the time he was considered for parole, and he has no right to be released on parole prior to the expiration of his maximum sentence." Id. at ¶ 19.
{¶ 32} In Robertson v. Ohio Adult Parole Auth., Franklin App. No. 01AP-1111, 2002-Ohio-4303, an inmate seeking declaratory relief did not attach a copy of the plea agreement upon which he relied to his complaint and did not allege that he received a promise that the OAPA would be prohibited from considering factors other than his offense of conviction in determining his parole eligibility. Id. at ¶ 32. We held that Robertson failed to state a cause of action for breach of contract, noting: "Nothing in the record substantiates that the state promised appellant that he would be released on parole at his first parole hearing." Id. at ¶ 31.
{¶ 33} In Talbert v. Ohio Adult Parole Auth. (June 12, 2001), Franklin App. No. 00AP-1461, we found that the inmate's plea agreement did not promise parole release after serving his minimum sentence, only consideration, and that his complaint failed to state a claim for breach of contract because his complaint, and the attachments to it, alleged, as do those of appellant, that he was considered for release at that time, but rejected. Id.
{¶ 34} Presuming all the factual allegations in appellant's complaint that relate to breach of contract to be true and making all reasonable inferences in his favor, we do not find any basis for distinguishing this case from the Walker, Budd, Robertson and Talbott decisions on that issue. By entering his plea agreement, appellant did not bind the OAPA in its ability to develop guidelines for helping it make parole decisions, nor did he prevent the OAPA from considering the actual facts of his crime or crimes for the purpose of determining when he can safely be returned to society. Calhoun v. Ohio Adult Parole Auth. (Sept. 25, 2001), Franklin App. No. 01AP-287. Appellant's first assignment of error is overruled.
{¶ 35} Appellant's second, fourth and fifth assignments of error, and the arguments made in support of each, are grounded in the various constitutional violations he alleged in his complaint, as well as his contention that the OAPA applied its own parole guidelines in an arbitrary and irrational fashion. While the fifth assignment of error expressly addresses the ex post facto issues, the second and fourth assignments of error are more general and seem to incorporate all of his constitutional and administrative claims. We will, therefore, discuss these assignments of error by attempting to relate the arguments contained in them to the appropriate portions of his complaint.
{¶ 36} The first count of the complaint alleged that the application of guidelines effective March 1, 1998, during the "half-time" review conducted in October 1999, violated the ex post facto provisions of the United States and Ohio Constitutions. The fourth count averred that the application of those revised guidelines breached his plea agreement and violated his rights to due process. Above, we discussed the reasons appellant failed to sufficiently state a claim for breach of the plea agreement, so it is not necessary for us to revisit that issue.
{¶ 37} The Fourth District Court of Appeals rejected the same constitutional arguments, made in support of appellant's motion to withdraw his guilty plea, explaining: "Since an inmate has no constitutional or statutory right to parole, the Supreme Court has rejected the proposition that a change in parole eligibility amounts to an ex post facto imposition of punishment." Wright, 2002-Ohio-3138, at ¶ 19. This court has consistently reached that conclusion as well, deciding that the application by the OAPA of parole guidelines not in effect at the time an inmate was first sentenced does not violate ex post facto prohibitions. In Budd, a case in which the complaining inmate's five assignments of error were worded the same as appellant's, we held:
{¶ 38} "* * * Under R.C. 2967.03, the parole decision is discretionary. * * * The OAPA's use of internal guidelines does not alter the decision's discretionary nature. * * * Appellant cannot claim any right to have any particular set of guidelines apply. * * * We have specifically held on numerous occasions that a prisoner has no right to rely on the parole guidelines in effect prior to his parole hearing date, and, thus, any application of amended parole guidelines are not retroactively applied ex post facto. * * * Therefore, appellant was deprived of no protected liberty interest when the OAPA used different guidelines than were effective at the time of his conviction, and he can claim no due process rights with respect to the parole determination. * * *" Budd, at ¶ 10.
{¶ 39} Even though we presume appellant's factual allegations in support of his claims of ex post facto and due process violations to be true, we do not agree with his conclusions and hold that the first and fourth counts of his complaint failed to state claims for relief in either regard. See Harris v. Wilkinson, Franklin App. No. 01AP-598, 2001-Ohio-4052, appeal not allowed (2002), 94 Ohio St.3d 1485. "An inmate has no vested interest in any particular set of parole guidelines, regulations, or matrices which assist the Parole Board in exercising its discretion, and changes in those matters do not impair any rights enjoyed by state prisoners pursuant to the United States Constitution." Id., quoting Akbar-El v. Wilkinson (1998), S.D.Ohio No. C2-95-472, affirmed (C.A.6, 1999), 181 F.3d 99. Consequently, appellant failed to adequately allege the existence of a legal interest or right in the manner necessary to present a justiciable issue. Wilburn.
{¶ 40} The second and third counts of the complaint alleged a violation of the separation of powers provisions of the United States and Ohio Constitutions, as well as the provisions of both governing proper delegation of authority. While the allegations in the complaint concerning these constitutional issues were limited and stated as a conclusion, appellant maintains in his brief that the OAPA has, in effect, modified his sentence from an indeterminate 7 to 25 year term to a 10 to 25 year term, thereby usurping the authority of the judicial branch. He makes a similar argument that the OAPA improperly exercised authority reserved to the General Assembly by not correctly crediting "good time" so as to reduce his minimum sentence instead of simply utilizing that consideration to calculate the date of his first parole hearing. Both of these arguments lack merit.
{¶ 41} Appellant received his first parole hearing prior to the expiration of his minimum sentence. He was denied parole. The sentencing range authored by the General Assembly for the offenses to which appellant pleaded guilty applicable at the time was 5 to 10 years as a minimum term to 25 years as a maximum term. Within that range the sentencing court imposed a term of 7 to 25 years on each conviction and ordered the terms to be concurrent. By denying parole at appellant's first hearing, the OAPA did not change those parameters and it did not invade the province of either the judiciary or the legislature. Budd, at ¶ 15. Under those sentencing statutes, when a trial court imposes a sentence within limits established by the General Assembly, it can control the minimum time to be served before an offender's release on parole and can control the maximum length of the offender's prison term, but it has no power over when parole might be granted in between those limits. Papp v. Ohio Adult Parole Auth., Franklin App. No. 01AP-892, 2002-Ohio-199, quoting Woods v. Telb (2000), 89 Ohio St.3d 504, 511; and Griffith v. Ghee, Madison App. No. CA2001-07-018, 2002-Ohio-1604.
{¶ 42} Moreover, the contended misapplication of good time, a subject to which appellant gives considerable attention in his appellate brief, was not among the averments of the complaint, either the factual ones or those stated as conclusions. Nonetheless, the OAPA's decision to grant or deny parole is an executive function involving a high degree of official judgment or discretion. Johnson v. Ohio Adult Parole Auth. (Feb. 15, 2000), Franklin App. No. 99AP-522. The discretionary authority in relation to parole eligibility and release given the OAPA, pursuant to R.C. 2967.01 et seq., has been properly delegated by the legislature. Appellant has no constitutional or inherent right to be released before the expiration of a valid sentence. Cannon v. Ohio Dept. of Rehab. and Corr., (Oct. 31, 2000), Franklin App. No. 00AP-327. He did not adequately present a claim or controversy with respect to any separation of powers violation or any improper delegation of authority.
{¶ 43} The fifth count of the complaint alleged equal protection violations. The proof required of an inmate attempting to show a denial of equal protection under either the United States or Ohio Constitutions must be "exceptionally clear" in establishing that the OAPA abused its discretion and that a "purposeful discrimination" resulted. Loper v. Ohio Adult Parole Auth. (June 28, 2001), Franklin App. No. 00AP-436. An inmate claiming a denial of equal protection must also establish what effect the discriminatory acts complained of had on him. Id., citing Mayrides v. Ohio Adult Parole Auth. (Apr. 30, 1998), Franklin App. No. 97APE08-1035. Allegations of equal protection violations, to survive a Civ.R. 12(B)(6) motion to dismiss must likewise be clear. Here, while appellant complained that he has been deprived "of the same considerations and benefits enjoyed by others similarly situated," he did not include any factual allegations in his complaint that any such difference in treatment was intentionally discriminatory or that no rational basis for the perceived difference in treatment existed. See Willowbrook v. Olech (2000), 528 U.S. 562, 564-565. Given the myriad of factors the OAPA considers in deciding whether or not to release a prisoner on parole, it is difficult to conceive that any two prisoners are similarly situated for purposes of an equal protection claim. See Loper. We cannot identify a set of facts, consistent with the complaint, that would justify the relief prayed for on equal protection grounds. The complaint fails to state an equal protection claim.
{¶ 44} Certain factual allegations in the complaint, while not denominated as claims or counts, do raise two additional issues that merit attention in deciding whether appellant stated any claim upon which relief can be granted. The first of these is an allegation that the OAPA improperly considered appellant's lack of participation in certain institutional programs as one of its reasons for denying parole at his initial hearing in 1997. We have reviewed the cases appellant cited[2]
in his complaint in support of the allegation that: "It has been firmly established in the Courts throughout the Land that, `forced program participation' is prohibited." None of these cases support that proposition. The OAPA has broad powers under R.C. 2967.03 to investigate appellant's conduct in the institution, his mental and moral qualities and characteristics, and other enumerated factors in deciding when he may become fit to be returned to society. Cannon. Consideration of his participation or lack of participation in institutional programs in connection with the denial of parole release is appropriate so long as a reasonable relation to an inmate's fitness to be at liberty exists. Id. Appellant did not allege the absence of such a nexus and, therefore, failed to state a claim in relation to the consideration of his institutional history of non-participation.
{¶ 45} The second issue raised by the factual allegations of the complaint, not otherwise included in appellant's numbered "counts," presents a challenge to the OAPA's having placed him in Category 10, Risk 1, for the purpose of reviewing his parole status at the "half-time" consideration in October 1999, and for future considerations. Appellant relies heavily on the decisions of the Court of Appeals of Ohio, Second Appellate District, in Randolph v. Ohio Adult Parole Auth. (Jan. 21, 2000), Miami App. No. 99 CA 17; and Lee v. Ohio Adult Parole Auth., Montgomery App. No. 18833, 2001-Ohio-1466.
{¶ 46} The Randolph decision reversed the granting of the OAPA's Civ.R. 12(B)(6) motion to dismiss the inmate's declaratory judgment action where, at his initial opportunity for parole consideration, Randolph was placed in an offense seriousness category based upon the offense for which he had been indicted, murder, a Category 11 crime, even though he was convicted of the lesser offense, voluntary manslaughter, a Category 9 crime. The majority in Randolph determined, under the circumstances of that case, that it could not find "beyond doubt that Randolph could not prove a * * * claim."
{¶ 47} The Second District court followed Randolph when, presented with similar facts, it affirmed summary judgment in favor of Lee. In Lee, the inmate, also appearing for his first parole consideration, was placed in an offense seriousness Category 13 based upon his originally indicted offense, aggravated murder, when he had been convicted of a Category 8 offense, involuntary manslaughter. The court explained its decision in Randolph to mean that: "[W]hen the APA begins its decision-making process, it should place inmates in the appropriate offense seriousness category and guideline range, based on the crime of conviction, not the crime for which the inmate may have been indicted." The court found the parole guidelines to be arbitrary and irrational when interpreted so as to define "current offense" as a crime other than the crime of conviction, and held:
{¶ 48} "* * * [W]here a defendant enters into a plea agreement with the State, and particularly, where, as here, minimum and maximum sentences are imposed as part of the agreement, a contracting party reasonably assumes that he will be given meaningful consideration for parole before his maximum sentence expires. However, meaningful consideration is absent when a defendant is placed in a category for which parole is not even available until after the expiration of his maximum term."
{¶ 49} This court has previously cited Randolph and Lee with approval where the circumstances presented to us were similar, that is, where the complaining inmates had been placed by the OAPA, for purposes of their original parole considerations, in offense seriousness categories greater than those representative of the crimes for which they were convicted. See Davis; Harris; and Oswalt v. Ohio Adult Parole Auth. (Oct. 4, 2001), Franklin App. No. 01AP-363. We have recognized, as explained by the Second Appellate District in State v. Callahan (Oct. 6, 2000), Montgomery App. No. 18237, that Randolph was limited to the issue of parole eligibility, "as distinguished from the actual parole determination." See Talbert. The significance of that distinction was confirmed in Lee, where the court cited Callahan and stated, with regard to its previous decision in Randolph: "We have also stressed that this holding does not prevent the APA from considering the facts of an inmate's crime in deciding if parole should actually be granted." In Talbert, we affirmed the trial court's dismissal of the complaining inmate's declaratory judgment action because, like appellant herein, he had previously been considered and rejected for parole after serving his minimum term of imprisonment. This court thus declined to extend the impact of Randolph and Lee beyond the limited issue of determining initial parole eligibility.
{¶ 50} Appellant set forth in his complaint that he pleaded guilty to two of the three original counts of his indictment, rendering this case clearly distinguishable from Randolph and Lee in that regard. It is also clear that appellant was considered for parole, but denied release on parole prior to the application of the new guidelines. The exhibits to the complaint show that the OAPA placed him in an offense category appropriate to the offense for which he was convicted, rape. While appellant presents a theory by which he concludes that the category assigned could have been a lower one, his allegations are not sufficient to permit us to conclude that he has stated a claim that the OAPA acted in an arbitrary or irrational fashion, thereby abusing its discretion, when it assigned a Category 10. Appellant's asserted theory that the classification should have been a lesser category is not supported by his own exhibits. For example, appellant attached to his complaint a partial transcript of testimony from a 1992 preliminary hearing in municipal court to support his contention that he was entitled to a lesser category because the testimony, as appellant interprets it, proved that no force or threat had been used in committing the offenses for which he was convicted. Nothing in the limited excerpts of testimony provided by appellant would require the OAPA, in exercising its broad discretion, to reach the conclusion he urges. A careful reading of the partial transcript shows, as relates to appellant, that the witness had no personal knowledge and had not interviewed the victim. All of the remaining testimony excerpted relates to the conduct of his then co-defendant. Appellant has failed to establish a basis for relief arising out of the OAPA's decision to place him in Category 10, Risk 1 for future parole consideration.
{¶ 51} For the reasons discussed, appellant's second, fourth and fifth assignments of error are overruled.
{¶ 52} Appellant argues in support of his third assignment of error that the trial court failed to address issues he raised in his complaint and his "subsequent filings." We construe this argument as a challenge primarily to the trial court's having dismissed all other pending motions as moot after it decided to grant the Civ.R. 12(B)(6) motion filed by the OAPA. He emphasizes in his "Opening Statement" of his brief the importance of subsequent filings, exhibits and affidavits to his arguments on appeal. He also identifies his breach of contract claim as "the main focus" of his complaint, contending that that issue, as well as his constitutional claims and violations of earned credit and earned good time calculations, were among those the trial court failed to fully consider.
{¶ 53} A trial court clearly has the discretionary authority in a case like this one where multiple motions are pending to consider a Civ.R. 12(B)(6) motion first and to dispense with the entire matter if the complaint, with its exhibits, when viewed by the requisite standard, fails to state a claim upon which relief may be granted. Budd, at ¶ 20. Once a case is dismissed because the complaint does not state a claim for relief, any other pending motions necessarily become moot. Id. Furthermore, courts must limit consideration of a Civ.R. 12(B)(6) motion to the allegations of the complaint. Beretta. The trial court was not permitted to consider the subsequent filings appellant refers to in disposing of the OAPA's motion to dismiss. We have carefully reviewed the trial court's written decision and cannot agree with his contention that the trial court failed to properly consider his arguments on a breach of contract or other theory. The third assignment of error lacks merit and is overruled.
{¶ 54} Having overruled all five assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BOWMAN and LAZARUS, JJ., concur.
HARSHA, J., of the Fourth Appellate District, sitting by assignment in the Tenth Appellate District.
[1] See State v. Wright, Scioto App. No. 01CA2804, 2002-Ohio-3138, at ¶ 9.
[2] Neal v. Shimoda (C.A.9, 1997), 131 F.3d 818; Anyanwutaku v. Moore (C.A.D.C. 1998), 331 U.S. App. D.C. 379; and Woods v. Kinkela (C.A.6, 1999), 202 F.3d 271, 1999 WL 1336063.