RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0148P (6th Cir.)
File Name: 03a0148p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JEFFREY GOODWIN,
　　　*Petitioner-Appellant,*

　　　*v.*　　　　　　　　　No. 00-3339

MARGARETTE GHEE,
　　　*Defendant-Appellee.*

---

Filed:　May 19, 2003

Before:　MARTIN, Chief Circuit Judge; BOGGS, BATCHELDER, DAUGHTREY, MOORE, COLE, CLAY, GILMAN, GIBBONS, and ROGERS, Circuit Judges.

---

**ORDER**

---

Pursuant to Rule 35 of the Federal Rules of Appellate Procedure and Sixth Circuit Rule 35, a majority of the active judges of this court voted to grant *en banc* review of this case. Following arguments by counsel and a conference among the judges, it was determined that the *en banc* court is equally divided in this case. Five members favor affirmance of the judgment of the district court, and five favor reversal. Pursuant to our decision in *Stupak-Thrall v. United States*, 89 F.3d 1269 (6th Cir. 1996), the judgment of the district court is affirmed by an equally divided vote.

The mandate will not issue for fourteen (14) days from the date of this order. Members of the court may file separate opinions if they wish.*

ENTERED BY ORDER OF COURT

/s/ Leonard Green

_____
Clerk

---

　*Judge GILMAN (pp. 3-5) filed a separate concurring opinion, in which Judges BATCHELDER, GIBBONS, and ROGERS joined. Judge COLE (pp. 6-7) filed a separate dissenting opinion, in which Judges DAUGHTREY, MOORE, and CLAY joined.

_____

**CONCURRENCE**

_____

RONALD LEE GILMAN, Circuit Judge, concurring. While incarcerated, Jeffrey Goodwin wrote a letter criticizing the Ohio Parole Board for allegedly engaging in discriminatory practices that resulted in unnecessarily long sentences, and for exercising unfettered discretion. This letter was published in the *Cleveland Call and Post* newspaper in October of 1996.

Goodwin had his first parole hearing in May of 1998 before Parole Board members Larry Matthews and Donald Cataldi. During this hearing, Mathews allegedly threatened to give Goodwin an "excessive sentence" in order to punish him for publicly criticizing the Parole Board and to deter others from doing the same. Matthews then assigned Goodwin a conviction-offense level of seven, despite allegedly having acknowledged that Goodwin was entitled to a conviction-offense level of only four. Under the Parole Board Guidelines, the conviction-offense level of seven prevented Goodwin from becoming eligible for release until after April 1, 2005, whereas a conviction-offense level of four would have entitled him to almost immediate release from incarceration. The defendants assert that the increased offense level was assigned to Goodwin because of his alleged involvement in an armed robbery, not in retaliation for his letter published in the *Cleveland Call and Post*.

Goodwin filed a request for reconsideration with the full Parole Board, seeking review of the determination by Matthews and Cataldi. On February 12, 1999, a majority of the full Parole Board voted to rescind the prior ruling and rehear the matter. Goodwin was then given a second hearing on April 23, 1999 before Parole Board members Jay Denton and Bernice Vance. Denton and Vance found that Goodwin was entitled to a conviction-offense level of four rather than seven. In arriving at the conviction-offense level of four,

however, Denton and Vance did not consider the armed robbery offense.

Goodwin alleges that soon after the April 1999 hearing, Matthews called him into the hearing room to tell him that he would be referring Goodwin's case to the full Parole Board. Matthews allegedly alluded to the letter in the *Cleveland Call and Post* when he told Goodwin that "the outcome [before the full Parole Board] would be different." On June 30, 1999, the full Parole Board conducted a third proceeding, at which time it determined that Goodwin's proper conviction-offense level was indeed seven, thus continuing his sentence of imprisonment until at least April of 2005.

Goodwin's complaint, which is based upon 42 U.S.C. § 1983, alleges that the Ohio Parole Board retaliated against him in violation of his First Amendment rights. The Supreme Court's basic test for the validity of a § 1983 action by prisoners—"whether a judgment in favor of the plaintiff would necessarily imply the invalidity of [the prisoner's] conviction or sentence," *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)—requires that these actions must be examined on a case-by-case basis in order to determine whether the prisoner has a cognizable claim. Another key Supreme Court decision, *Edwards v. Balisok,* 520 U.S. 641 (1997), addresses "the possibility, clearly envisioned by *Heck*, that the nature of the challenge to the procedures could be such as necessarily to imply the invalidity of the judgment." *Id.* at 645. The district court, on the basis of *Heck* and *Edwards*, granted the state's motion for summary judgment because a ruling in Goodwin's favor would necessarily imply the invalidity of the Ohio Parole Board's decision to deny him an immediate release on parole.

Of the three cases that are before us in this consolidated en banc appeal, Goodwin's claim is the one that is most analogous to the facts that barred the prisoner's § 1983 claim in *Edwards*. The nature of Goodwin's claim goes to the very heart of why the Supreme Court ruled in *Edwards* that an attack on prison procedures can imply the invalidity of the

underlying conviction or sentence.  As in the case before us, Edwards's § 1983 challenge was based on the personal animus against him that allegedly took place at a disciplinary hearing:

> Respondent's claim . . . assert[s] that the cause of the exclusion of the exculpatory evidence was the deceit and bias of the hearing officer himself.  He contends that the hearing officer lied about the nonexistence of witness statements, and thus "intentionally denied" him the right to present exculpatory evidence.

*Id.* at 647 (internal citations omitted).  Yet the Supreme Court held that Edwards's § 1983 claim could not be maintained, because the allegation of intentional misconduct on the part of the hearing officer at the disciplinary proceeding necessarily implied the invalidity of the decision against Edwards.  The same is true of Goodwin's claim, and I see no principled distinction between the two cases.  I therefore concur in affirming the judgment of the district court.

_____

**DISSENT**

_____

R. GUY COLE, JR., Circuit Judge, dissenting.  Although, by vote of the equally divided *en banc* court, the court today affirms the district court's judgment dismissing plaintiff Jeffrey Goodwin's civil rights suit, I write separately because it is my view that Goodwin's procedural challenge to his parole hearing does not necessarily attack the fact of his conviction or the duration of his confinement.  Goodwin seeks only a new hearing before the Ohio Adult Parole Board—not immediate release.  Although the duration of Goodwin's sentence may possibly be impacted by a successful challenge pursuant to 42 U.S.C. § 1983, the duration of his confinement will not *necessarily* be affected.  *See Heck v. Humphrey*, 512 U.S. 477, 481-82 (1994).  Therefore, I would conclude that § 1983 is the appropriate vehicle for this suit.

Defendants suggested at oral argument that, should Goodwin succeed on his § 1983 claim, he would be entitled to immediate release because his conviction offense level would automatically be decreased from seven to four.  This is simply not the case.  If he were to succeed on his § 1983 claim, Goodwin would receive "nothing more than a 'ticket to get in the door of the parole board.'"  *Anyanwutaku v. Moore*, 151 F.3d 1053, 1057 (D.C. Cir. 1998).  Goodwin would not be guaranteed parole or a shorter sentence.  *See id.* at 1056.  Rather, Goodwin would receive a new hearing just as he did when he moved for reconsideration and received a second hearing, and again when the Parole Board decided to reconsider his parole eligibility for a third time.

At this new hearing, the Parole Board would have considerable discretion under Ohio law to determine the appropriate conviction offense level and release date for Goodwin.  *See* OHIO ADMIN. CODE §§ 5120:1-1-07(B), (C).  Although Goodwin might receive an offense level of four at

this hearing, he could receive a seven, some score in between, or even a higher score.  For example, Goodwin could prove his First Amendment claim by showing retaliation, but at the same time fail to demonstrate that the Parole Board fabricated the charge of armed robbery that allegedly caused his score to increase from four to seven.  Under this scenario, Goodwin might not receive immediate release.  Alternatively, the Parole Board might exercise its discretion to consider factors that it had not considered previously, such as Goodwin's conduct in prison since June 1999, other conduct not previously considered, or any new recommendations made by the staff of the department of rehabilitation and correction or any of its agencies.  *See* OHIO ADMIN. CODE § 5120:1-1-07(C).

Because Goodwin seeks and, if successful, would receive a new hearing at which the Parole Board would again exercise its broad discretion, I would find that his § 1983 claim is not barred by *Heck*, 512 U.S. 477.  I respectfully dissent.