RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0147P (6th Cir.)
File Name: 03a0147p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

No. 00-4033
WILLIAM DWIGHT DOTSON,
    *Plaintiff-Appellant,*

v.

REGINALD A. WILKINSON,
    *Defendant-Appellee.*

No. 00-4051
ROGERICO JOHNSON,
    *Plaintiff-Appellant,*

v.

MARGARETTE GHEE,
    *Defendant-Appellee.*

Nos. 00-4033/4051

Appeal from the United States District Courts
for the Northern District of Ohio
at Toledo and Youngstown.
Nos. 00-07303; 00-01075—David A. Katz and
Peter C. Economus, District Judges.

Argued and Submitted: December 11, 2002

Decided and Filed: May 19, 2003

Before: MARTIN, Chief Circuit Judge; BOGGS, BATCHELDER, DAUGHTREY, MOORE, COLE, CLAY, GILMAN, GIBBONS, and ROGERS, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** John Q. Lewis, JONES, DAY, REAVIS & POGUE, Cleveland, Ohio, for Appellant. Todd R. Marti, OFFICE OF THE ATTORNEY GENERAL, CORRECTIONS LITIGATION SECTION, Columbus, Ohio, for Appellees. **ON BRIEF:** John Q. Lewis, JONES, DAY, REAVIS & POGUE, Cleveland, Ohio, for Appellant. Todd R. Marti, OFFICE OF THE ATTORNEY GENERAL, CORRECTIONS LITIGATION SECTION, Columbus, Ohio, for Appellees.

MARTIN, C. J., delivered the opinion of the court, in which BOGGS, DAUGHTREY, MOORE, COLE, and CLAY, JJ., joined. GILMAN, J. (pp. 17-29), delivered a separate opinion concurring in part and dissenting in part, in which BATCHELDER, GIBBONS, and ROGERS, JJ., joined.

_____

**OPINION**

_____

BOYCE F. MARTIN, JR., Chief Circuit Judge. Rogerico Johnson and William Dwight Dotson appeal the dismissal of their individual 42 U.S.C. §1983 claims against the Ohio Adult Parole Authority. The claims asserted improprieties in the respective plaintiffs' parole proceedings. These claims were dismissed as not cognizable under section 1983, according to the rule of *Heck v. Humphrey*, 512 U.S. 477 (1994). The district courts ruled that these claims were

cognizable only under a petition for habeas corpus because they necessarily implied the invalidity of the prisoners' confinement. For the following reasons, we REVERSE the judgment of the district court and find that certain prisoner claims are cognizable under section 1983.

In April of 1999, Rogerico Johnson, who was incarcerated in the state of Ohio, had an initial parole hearing. According to the Ohio Code, the parole hearing must be conducted by the Parole Board or by at least one member of the Parole Board and one Parole Board Hearing Officer. In Johnson's case, the hearing was conducted by one Parole Board member alone. At the hearing, that member of the Parole Board did not allow Johnson to speak on his own behalf, although the Code requires that she consider his oral or written statements. She did not ask Johnson any questions; Johnson was not allowed to ask any questions. The Parole Board member based her decision to deny parole on two alleged convictions for which Johnson was never even charged, in violation of the Code's permissible considerations.

Johnson claims that his due process rights were violated by this parole hearing. He filed a section 1983 claim challenging the parole hearing, not the denial of parole. He sought declaratory and injunctive relief. The district court dismissed Johnson's suit for failure to state a claim under 28 U.S.C. § 1915(e), finding that *Heck* precluded his claim. Johnson alleges that this challenge is cognizable under section 1983 and that the district court erred in dismissing his complaint.

William Dwight Dotson was convicted in Ohio in 1981 of aggravated murder. Under the regulations in place at the time, he was not eligible for parole for fifteen years. If he were denied parole at that point, the Parole Board would be required to give him another hearing within five years. Dotson was denied parole initially, and the Parole Board set his next hearing for ten years later, with a halfway point evaluation in five years. This plan complied with the regulations in effect when Dotson was sentenced.

Before that five years lapsed, however, the Ohio regulations changed, and the new parole rules said that a prisoner convicted of aggravated murder was not eligible for parole for more than thirty-two years. Dotson attended his halfway review, scheduled under the regulations in place at the time of his initial incarceration. At that review, however, the Parole Board decided the new rules applied retroactively, and the Parole Board announced that Dotson would not be eligible for parole until 2007. They nevertheless kept the 2005 date scheduled for Dotson's next hearing. The Parole Board made a determination about Dotson's parole eligibility, not about his parole suitability, as was required by the old regulations.

Dotson filed suit under section 1983, alleging violations within the parole hearing procedures. The district court dismissed Dotson's claim, stating it was not cognizable under section 1983.

When a district court dismisses a case or claim pursuant to 28 U.S.C. § 1915(e), this court reviews such dismissal *de novo*. *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997). The grant of a motion for summary judgment is also reviewed *de novo,* and this court applies the same standard the district court applied. *See Perry v. McGinnis*, 209 F.3d 597, 600 (6th Cir. 2000).

Federal habeas corpus pursuant to 28 U.S.C. § 2254 is the exclusive avenue for challenging the fact or duration of a prisoner's confinement, but civil rights actions pursuant to 42 U.S.C. § 1983 are available to challenge the conditions of that confinement, according to the Supreme Court. *See Preiser v. Rodriguez*, 411 U.S. 475 (1973). The cases before this *en banc* court today involve the intersection of these two provisions. It is our task to determine under what circumstances a prisoner may use a section 1983 action, rather than a habeas corpus petition, to challenge the procedures used in his parole hearing.

Five somewhat confusing Supreme Court cases govern the issue here, and our sister circuits have struggled with application of their holdings. We have struggled as well, as evidenced by the conflicting opinions, mostly unpublished, of this court thus far. We now seek to clarify the conflict.

The oldest of the relevant Supreme Court cases is *Preiser*. 411 U.S. 475. In this case, prisoners challenged a policy of deprivation of good-time credits after disciplinary hearings. *Id.* at 476-82. The prisoners sought injunctive relief in the form of immediate restoration of the credits, which in every case would automatically result in the prisoners' immediate release from confinement. *Id.* at 477. Because this action challenged the duration of their confinement, the Supreme Court held that "a state prisoner challenging his underlying conviction and sentence on federal constitutional grounds in a federal court is limited to habeas corpus." *Id.* at 489.

As explained above, however, *Preiser* left open the possibility that a section 1983 claim might still lie. The Supreme Court said, "[I]f a state prisoner is seeking damages, he is attacking something other than the fact or length of his confinement, and he is seeking something other than immediate or more speedy release--the traditional purpose of habeas corpus." *Id.* at 494. The Court went on to say, "Accordingly, . . . a damages action by a state prisoner *could* be brought under the Civil Rights Act in federal court without any requirement of prior exhaustion of state remedies." *Id.* (emphasis added).

After imagining a prisoner's claim that might be cognizable under section 1983 in *Preiser*, the Supreme Court decided in *Wolff v. McDonnell*, 418 U.S. 539, 554-55 (1974), that a section 1983 claim for damages based on a challenge to the procedures employed by the state in imposing sanctions on a prisoner, including the loss of good-time credits for flagrant or serious misconduct, was in fact cognizable. The suit was a class action, and it issued a general challenge to the procedures employed by the state. The Court said, "[I]t was

proper for the [courts] to determine the validity of the procedures for revoking good-time credits and to fashion appropriate remedies for any constitutional violations ascertained, short of ordering the actual restoration of good time already cancelled." The Court recognized the section 1983 claim.

After a long period of silence on the matter, the Court decided *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, a prisoner claimed that the defendants, state prosecutors and investigators, had engaged in an unlawful investigation of him that led to his unlawful arrest and prosecution. He sought compensatory and punitive damages but not release from custody or other injunctive relief. Nevertheless, because the Court found that Heck was actually testing the reliability and legality of his confinement, his claim was not cognizable under section 1983. *Id.* at 481-82.

The Court sought to further clarify the question, however. Citing the *Preiser* quote above, that seeking damages is not challenging one's confinement, the Supreme Court said, "That statement may not be true, however, when establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction." *Id.* at 481. The Supreme Court went on to limit the use of section 1983 for prisoner claims, stating at 486-87, that

in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

The Court, however, then said, "[I]f the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* at 487. The cognizable claim, then, cannot be the kind of challenge that fits squarely within the core of habeas corpus, a challenge to the fact or duration of confinement. The question becomes what the Supreme Court intends by "necessarily demonstrates," as to the validity of a conviction or sentence. *Id.* at 481.

The Supreme Court further explored that question in *Edwards v. Balisok*, 520 U.S. 641 (1997). In that case, a state prisoner claimed to challenge only the procedures used in his disciplinary proceeding, believing that he had carved out the sort of claim cognizable under section 1983, *Preiser*, and *Heck*. The procedures at issue, however, regarded the loss of good-time credits. In seeking and successfully attaining restoration of good-time credits, a prisoner's sentence was necessarily and automatically shorter. The Supreme Court held that the prisoner's narrow interpretation of a cognizable claim was not narrow enough; the nature of a challenge to procedures may still imply the invalidity of the conviction or sentence. *Id.* at 645. As a result, a claim attacking only procedure, not result, may still fail to be cognizable under section 1983 unless the prisoner can show that the conviction or sentence has been previously invalidated, where, as in *Edwards*, the challenge can be said to "necessarily" imply the invalidity of the continued confinement.

Finally and most recently, in *Spencer v. Kemna*, 523 U.S. 1 (1998), the Supreme Court reiterated that some kind of prisoner claim is cognizable under section 1983. The Court wrote, "If, for example, petitioner were to seek damages 'for using the wrong procedures, not for reaching the wrong result,' and if that procedural defect did not 'necessarily imply the invalidity of' the revocation, then *Heck* would have no application [at] all." *Id.* at 17 (internal citations omitted).

The Supreme Court seems thus to have dictated how these claims can proceed, but the cases from the lower courts are anything but clear, and the rulings from the various circuits are not entirely consistent. As explained more fully below, the District of Columbia Circuit has found that a challenge to parole proceedings is cognizable under section 1983, as has the Fifth. The Seventh Circuit recognizes that some prisoner claims are cognizable under section 1983 rather than habeas, but it is not clear where challenges to parole proceedings lie. The Tenth, the Ninth, and the Eighth Circuits have conflicting precedent.

In *Anyanwutaku v. Moore*, 151 F.3d 1053 (D.C. Cir. 1998), the Court of Appeals for the District of Columbia Circuit held that an inmate's constitutional challenge alleging miscalculation of a parole eligibility date could be brought as a section 1983 action. The court indicated that because parole decisions in the District of Columbia were discretionary, there was no guarantee the inmate would have been released any earlier. Likewise, in *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997), the court said, "Generally, section 1983 suits are the proper vehicle to attack unconstitutional conditions of confinement and prison procedures," whereas a habeas petition is the proper vehicle for seeking release from incarceration.

The Seventh Circuit recently summarized its standard in *Moran v. Sondalle*, 218 F.3d 647, 650-51 (7th Cir. 2000) (internal citations omitted), in this way:

State prisoners who want to challenge their convictions, their sentences, or administrative orders revoking good-time credits or equivalent sentence-shortening devices, must seek habeas corpus, because they contest the fact or duration of custody. State prisoners who want to raise a constitutional challenge to any other decision, such as transfer to a new prison, administrative segregation, exclusion from prison programs, or suspension of privileges, must instead employ §1983 or

another statute authorizing damages or injunctions--when the decision may be challenged at all . . . .

The question remains, however, whether a parole hearing is an "equivalent sentence-shortening device" or "any other decision" in the Seventh Circuit.

The Tenth Circuit cases are in conflict. Early Tenth Circuit cases seem to say that habeas is appropriate for claims arising from parole procedures. *See Crow v. Penry*, 102 F.3d 1086 (10th Cir. 1996). This case, however, predated *Spencer v. Kemna*. 523 U.S. 1 (1998). More recently, the Tenth Circuit has said, albeit in an unpublished opinion, "[S]ection 1983 actions are typically the proper vehicle for attacking unconstitutional conditions of confinement and parole procedures." *Woodruff v. Everett*, No. 01-8087, 2002 WL 1614233, *1 (10th Cir. July 23, 2002).

The Ninth Circuit rule distinguishes among different parole procedures. That court, in *Butterfield v. Bail*, 120 F.3d 1023, 1024 (9th Cir. 1997), said, "We have no difficulty in concluding that a challenge to the procedures used in the denial of parole necessarily implicates the validity of the denial of parole and, therefore, the prisoner's continuing confinement." As support, in Footnote 1, the court cited *Crow v. Penry*, 102 F.3d at 1087, and *McGrew v. Texas Board of Pardons & Paroles*, 47 F.3d 158, 161 (5th Cir. 1995). *Id.* The court contrasted the facts in *Neal v. Shimoda*, 131 F.3d 818 (9th Cir. 1997), to the facts in *Butterfield*. In *Neal*, prisoners brought a section 1983 action to challenge their characterization as sex offenders for purposes of a state registration program. The Ninth Circuit noted that success on the merits for the claimants would not call into question the validity of their confinement; it would merely remove them from the sex offender list and registration program requirements. *Id.* at 823-24. As a result, the prisoners' claims were properly brought under section 1983. *Id.*

Finally, the Eighth Circuit has characterized the state of the law in this way: "Claims challenging the conditions of confinement or the method by which a sentence is being carried out may be asserted through a §1983 cause of action. However, a state prisoner challenging the fact or duration of a sentence of imprisonment and seeking immediate or speedier release has a federal remedy through habeas corpus and cannot bring a claim under § 1983." *Williams v. Hopkins*, 130 F.3d 333, 335-36 (8th Cir. 1997).

As to where this Court ultimately stands on these issues, we first look to *Ward v. Engler*, Nos. 00-1867, 00-1948, 2001 WL 278683 (6th Cir. Mar. 13, 2001) (unpublished opinion).[1] In ruling that the plaintiffs actually objected to the outcomes of their parole hearings, not the procedures of those hearings, we said, "Essentially, plaintiff's claims are not cognizable under §1983 because plaintiff cannot show that the decision to deny plaintiff consideration for parole was invalidated, and a ruling in plaintiff's favor in this case would necessarily implicate the continued validity of his imprisonment." We further have said,

One reason which [the prisoner] gave for why his parole was improperly denied was some of the convictions used to deny his parole were invalid. As a ruling on the parole board's decision denying [him] parole would thus question the validity of these challenged convictions, *Heck* directs that the complaint be dismissed. Further, as [the prisoner] is contesting his actual confinement, his sole remedy is a writ of habeas corpus, not a civil rights action.

---

[1]While this court limits the precedential value and citation to its unpublished cases, we feel it is important here to elucidate the confusion among panels of this court on the issues before the *en banc* court. The myriad unpublished cases on this issue and the differing results therein merit mention and clarification.

*Chandler v. Michigan Parole Bd.*, No. 99-1119, 2000 WL 875771, *1 (6th Cir. Jun. 20, 2000) (unpublished opinion). These decisions would deny Johnson and Dotson the relief they seek.

On the other side, this court has also recognized certain prisoner parole claims under section 1983. "When a prisoner is not claiming immediate entitlement to parole, but rather is challenging parole procedures, he may bring his action under § 1983." *Coffey v. Tennessee*, No. 00-5776, 2001 WL 493400, *2 (6th Cir. May 1, 2001) (unpublished opinion); *see also Fraser v. Tenn. Bd. of Paroles*, No. 00-5166, 2000 WL 1800634, *1 (6th Cir. Nov. 30, 2000) (unpublished opinion). In *Seagroves v. Tennessee Board of Probation & Parole*, No. 01-6274, 2002 WL 1379028,*2 (6th Cir. Jun. 25, 2002) (internal citations omitted) (unpublished opinion), we said,

> The district court should not have dismissed Seagroves's complaint under *Preiser* because he is challenging the procedures used to determine his parole eligibility rather than the decision itself. *Preiser* and *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), do not bar all § 1983 challenges to parole procedures. . . . Although a prisoner cannot sue under § 1983 for immediate or speedier release, a prisoner *can* bring a § 1983 challenge to state parole procedures because the success of such a lawsuit would only increase the prisoner's chances of discretionary parole. . . . He seeks, not immediate or speedier release, but a new hearing utilizing what he considers the proper statutes and procedures.

As is clear, the cases from this court are in conflict. As a result, we are forced to closely evaluate Johnson's and Dotson's claims with regard to all the precedent.

The dissent would draw a distinction between procedural challenges to parole eligibility hearings, as described in Dotson's case, at which the parole board determines a date at

which a prisoner will be eligible for a parole determination hearing, and parole determination hearings themselves. The Ninth Circuit has endorsed this distinction. *Compare Neal*, 131 F.3d at 824 ("The only benefit that a victory in this case would provide [the plaintiffs] . . . is a ticket to get in the door of the parole board, thus only making them *eligible* for parole consideration according to the terms of their sentences") (emphasis added), *with Butterfield*, 120 F.3d at 1024 (finding action alleging violation of due process rights where parole board considered false information directly and necessarily implicates the validity of the denial of parole and, therefore, prisoner's continuing confinement). While it is not clear from the record that Dotson was supposed to receive a parole eligibility hearing as opposed to a parole determination or suitability hearing, we agree with the dissent that procedural challenges to parole eligibility hearings will rarely, if ever, "necessarily imply" the invalidity of a prisoner's conviction or continued confinement. *See Neal*, 131 F.3d at 824 (observing that prisoner's challenges to parole eligibility determinations, if successful, would not "necessarily shorten their prison sentences by a single day"). We differ with the dissent, however, as to Johnson, because we believe that there also may exist procedural challenges to parole determination or suitability hearings that will likewise not "necessarily imply" the invalidity of a prisoner's conviction or continued confinement.[2]

---

[2]The majority finds it important to note that the Supreme Court cases establishing the precedent for this case refer to necessarily implying the invalidity of the "conviction," "sentence," or "judgment." *See Heck*, 512 U.S. at 487 ("conviction or sentence"); *see also Edwards*, 520 U.S. at 645 ("judgment"). The dissent, nevertheless, extends the rule of those cases. The dissent refers to necessarily implying the invalidity of the "hearing" and the "judgment," where "judgment" refers to a decision of the Ohio Parole Board. (Dis. Op. at 17, 22, 28) For the purposes of this case, the majority believes "judgment" properly refers only to the decision of a convicting court.

Although Dotson challenges a parole eligibility determination and Johnson a parole release determination, the success of either challenge would result in a new hearing that would follow the appropriate procedures under Ohio law. Under Ohio law, parole is discretionary. *See* Ohio Rev. Code Ann. § 2967.03 (2002); Ohio Admin. Code §§ 5120: 1-1-07(B), (C). As the Supreme Court of Ohio said, in *State ex rel. Blake v. Shoemaker*, 446 N.E.2d 169, 170 (Ohio 1983), the Ohio parole statute "is a grant of discretion; it does not create any presumption that parole will be issued and does not create an expectancy of parole . . . ." Therefore, the impact the new hearings would have on Dotson and Johnson's parole or release is indeterminate. Because the ultimate impact of these new hearings on the validity of Dotson or Johnson's continued confinement is unclear, we cannot say that a successful section 1983 action that simply results in a new discretionary parole hearing "necessarily implies" the invalidity of either plaintiff's conviction or sentence.

A successful challenge will only "necessarily imply" the invalidity of a prisoner's conviction or sentence if it will inevitably or automatically result in earlier release. A challenge to the loss of good-time credits is an example of such a challenge. *Edwards*, 520 U.S. at 647. This determination will depend upon the facts of the particular case. However, where the ultimate parole determination is discretionary and based on a host of factors, as it is in Ohio, it will be difficult to predict any highly likely or inevitable consequence of the parole determination hearing. Here, neither of the inmates' release is necessarily at issue, nor do these challenges call into question the duration or fact of either prisoner's confinement. In *Anyanwutaku,* 151 F.3d at 1055-1056, the D.C. Circuit said,

Although Anyanwutaku would have been eligible for parole at an earlier date had he prevailed on his claims in the district court, because D.C. parole decisions are entirely discretionary . . . there is no guarantee that he would have been released any earlier. Interpreting

*Preiser*, a majority of our sister circuits have held that challenges to state parole procedures whose success would not necessarily result in immediate or speedier release need not be brought in habeas corpus, even though the prisoners filed their suits for the very purpose of increasing their chances of parole.

Dotson and Johnson merely request an opportunity for a fair and untainted parole hearing.

Dotson's challenge to the procedures used to determine the date upon which he will be considered for parole, if successful, would not "necessarily imply" the invalidity of his continued confinement. Rather, success on this challenge would simply provide Dotson with a discretionary parole hearing at which the Parole Board would determine whether parole was appropriate in his case.

Similarly, the consequence of a successful procedural challenge by Johnson will be a new discretionary parole hearing. Like Dotson, Johnson simply seeks a ticket to get back in the door of the parole board. It is unclear what the ultimate result of Johnson's new parole hearing would be. Johnson claims that the Parole Board violated due process when it failed to follow Ohio law governing parole determinations by, among other things, having an insufficient number of Parole Board members at Johnson's hearing and not giving Johnson an opportunity to speak. Thus, should Johnson succeed on this claim, he would simply receive a new hearing at which the Parole Board would follow properly the procedures as set forth under Ohio law. Not every procedural defect necessarily has an impact on the ultimate outcome of a procedurally defective hearing. The remedying of many procedural defects will not cause any different outcome at all, much less "necessarily imply" that the prisoner should be released immediately or sooner than he would have been released absent the challenge. In any event, under Ohio law, the broad discretion afforded to the Parole Board leaves

us with little ability to predict what will "necessarily" occur as a result of Johnson's new parole hearing.

Further, as the District of Columbia Circuit pointed out, citing *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1 (1979), "Even the Supreme Court reached the merits of a section 1983 claim by state prisoners alleging due process violations in the consideration of their suitability for parole without first addressing whether *Preiser* required the claim to be brought in habeas." *Anyanwutaku,* 151 F.3d at 1056. We see no reason to require that Johnson and Dotson's claims be lodged as a general challenge in a class action suit, rather than a particularized challenge to procedures as applied, especially where neither prisoner's challenge will necessarily result in his earlier release.

Thus, where a prisoner does not claim immediate entitlement to parole or seek a shorter sentence but instead lodges a challenge to the procedures used during the parole process as generally improper or improper as applied in his case, and that challenge will at best result in a new discretionary hearing the outcome of which cannot be predicted, we hold such a challenge cognizable under section 1983.[3]

In conclusion, an incarcerated person obviously seeks to be released from confinement. A prisoner cares not a whit as to

---

[3]This is the clearest statement of the standard the majority intends to establish today. The dissent repeatedly oversimplifies this standard, stating, "Because Ohio's parole system is discretionary, the majority opinion reasons, no § 1983 claim resulting in a new hearing will necessarily imply the invalidity of the underlying conviction or sentence" (Dis. Op. at 17) and "the majority has erred in ruling that all attacks on parole procedures in Ohio that require a new hearing to correct are cognizable under § 1983" (Dis. Op. at 26). The dissent fails to acknowledge the majority's recognition that certain section 1983 claims, those that automatically result in earlier release, will never be cognizable under current Supreme Court precedent.

how that happens, but this court must care. We do not read into a legal claim what we know on a human level is realistically there: a prisoner who objects to his confinement may nevertheless raise a section 1983 claim, a legal claim, if his due process rights have been violated and the challenge does not *necessarily* implicate the invalidity of his continued confinement. Johnson and Dotson are not requesting that the parole board make a different decision, although we understand that they wish it would; they are merely requiring that the parole board comply with the law in making that decision.

We hold that procedural challenges to parole eligibility and parole suitability determinations such as those made by Dotson and Johnson do not "necessarily imply" the invalidity of the prisoner's conviction or sentence and, therefore, may appropriately be brought as civil rights actions, under 42 U.S.C. § 1983, rather than pursuant to an application for habeas corpus. To the extent that our prior opinions are in conflict with our reasoning expressed today, they are overruled. For the foregoing reasons, we REVERSE the district court as to Johnson and Dotson.

---

**CONCURRING IN PART, DISSENTING IN PART**

---

RONALD LEE GILMAN, Circuit Judge, concurring in part and dissenting in part. I believe that the majority opinion has adopted an overly broad "earlier release" test that conflates the distinct factual issues presented by these two appeals, thereby confusing the already complicated area of law at the intersection of habeas corpus and 42 U.S.C. § 1983. *See Wolff v. McDonnell,* 418 U.S. 539, 579 (1974) ("[T]he demarcation line between civil rights actions and habeas petitions is not always clear."). *Heck's* basic test of "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of [the prisoner's] conviction or sentence," *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), suggests that prisoner § 1983 actions must be examined on a case-by-case basis in order to determine whether the plaintiff has a cognizable claim. The *Heck* test was further refined by *Edwards v. Balisok,* 520 U.S. 641 (1997), which addresses "the possibility, clearly envisioned by *Heck*, that the nature of the challenge to the procedures could be such as necessarily to imply the invalidity of the judgment." *Id.* at 645.

In its holding, the majority opinion focuses on whether a § 1983 claim will necessarily shorten a prisoner's time in jail. The majority thus glosses over what I believe is the Supreme Court's actual rule—that it is the *judgment* of the administrative body (in this case, the parole board) whose validity may not be questioned by a § 1983 action, regardless of the judgment's effect on the length of the prisoner's underlying conviction or sentence. Because Ohio's parole system is discretionary, the majority opinion reasons, no § 1983 claim resulting in a new hearing will necessarily imply the invalidity of the underlying conviction or sentence. (Maj. Op. at 12-13)

The majority opinion's "earlier release" test, in my opinion, fails to properly distinguish between the distinct natures of Dotson's and Johnson's challenges to Ohio's parole procedures. I believe that Dotson's claim may proceed under § 1983, but that Johnson's claim may not. Set forth below is my analysis of how I believe the test developed by the Supreme Court from *Presier v. Rodriguez,* 411 U.S. 475 (1973), through *Spencer v. Kemna,* 523 U.S. 1 (1998), should be applied to their respective claims.

## I. DOTSON'S CLAIM

### A. Factual and procedural background

Dotson challenges the retroactive application of Ohio's parole-eligibility guidelines to his sentence. He was sentenced in July of 1981 to life imprisonment for aggravated murder. Dotson alleges that, at the time of his conviction, Ohio Revised Code § 2967.13(B) provided that prisoners serving a life sentence were eligible for parole after 15 years. Pursuant to the parole-eligibility statute and regulations, Dotson received his first parole hearing in 1995. He was denied parole, and the Board scheduled a second hearing for June of 2005, with a halfway review in March of 2000. On March 1, 1998, the Ohio Parole Board adopted new guidelines to assist the Board in determining whether to grant or deny parole in future hearings. The new guidelines weigh the seriousness of the offense committed, as well as the inmate's criminal history and risk to society, to provide a range of months that must be served before the inmate becomes eligible for parole release.

Dotson alleges that, at his halfway review in March of 2000, the Parole Board retroactively applied the new guidelines to determine his parole eligibility. As a result, the Parole Board noted that Dotson would still be seven years short of parole eligibility under the new guidelines at the time of his next scheduled hearing in 2005.

## B.  Analysis

### 1.  Heck *and* Edwards *forbid § 1983 actions that question the validity of a state judgment determining whether a prisoner should be released on parole*

In its analysis of both Dotson's and Johnson's claims, the majority opinion adopts an "earlier release" test in holding that all attacks on parole procedures in Ohio are cognizable under § 1983 as long as they do not necessarily imply the invalidity of a prisoner's conviction or confinement by inevitably or automatically resulting in earlier release. (Maj. Op. at 13) I believe that the majority opinion's test is contrary to the holdings of *Heck* and *Edwards*. In *Heck,* the Supreme Court held that "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal *judgment* against the plaintiff, the action should be allowed to proceed . . . ." *Heck*, 512 U.S. at 477 (second emphasis added).  The Court was suggesting that the real problem was not that the prisoner's § 1983 action would necessarily get him out of jail sooner, but rather that the federal courts must not allow the use of § 1983 to imply the invalidity of *any* state criminal judgments relating to the length of a prisoner's incarceration.

In *Edwards,* the Supreme Court extended this principle when outlining the effect of correcting the procedural defect in question.  The Court stated: "This is an obvious procedural defect, and state and federal courts have reinstated good-time credits (*absent a new hearing*) when it is established." *Edwards*, 520 U.S. at 647 (emphasis added).  In other words, it is the implied invalidity of the administrative hearing itself—that can be corrected only by a new hearing—that is an impermissible result of a § 1983 claim.

Finally, the Court's statement in *Spencer* that a § 1983 action might lie if the "procedural defect did not necessarily imply the invalidity of the [parole] revocation . . . ." *Spencer*, 523 U.S. at 17 (internal quotation marks omitted), is not

inconsistent with the holdings in *Edwards* and *Heck*.  The Court gave no indication of any departure from its earlier cases to the effect that a decision to revoke parole, whether or not procedurally defective, must not be rendered invalid by the federal courts.

In attempting to avoid the rationale of the *Heck* and *Edwards* decisions, the majority opinion places great weight on the discretionary nature of Ohio's parole system.  Because "the impact the new hearings would have on Dotson and Johnson's parole or release is indeterminate," the majority contends that the validity of the administrative judgment has not been questioned. (Maj. Op. at 13)  A similar argument, however, was advanced by the petitioner in *Edwards* to the effect that a ruling in Edwards's favor on his § 1983 procedural attack would not necessarily imply the invalidity of the loss of his good-time credits because the Washington courts could still uphold the administrative determination once the procedural errors were corrected. *Edwards,* 520 U.S. at 647.  But the Court clearly rejected this argument in *Edwards*. *Id.* at 648.  Simply because the administrative body might reach the same result the second time around, therefore, does not save a § 1983 procedural attack.  Furthermore, the majority believes that the Supreme Court's use of the word "'judgment' properly refers only to the decision of a convicting court." (Maj. Op. at 12, n. 2)  I disagree, however, because *Edwards* itself was dealing with the judgment of an administrative body. *Edwards*, 520 U.S. at 645.

### 2.  *The 2000 halfway review did not grant or deny parole*

The place to begin analyzing the nature of Dotson's claim and its legal implications is to look at the kind of proceeding that he challenges.  At issue in his complaint are the actions taken at his halfway review in March of 2000.  This proceeding did not result in Dotson being either granted or denied parole.  Without removing his scheduled 2005 parole-determination hearing from the calendar, the Parole Board instead decided to retroactively apply Ohio's new eligibility

guidelines to Dotson. Dotson's complaint does nothing more than challenge this interim action. Although the Supreme Court has never dealt with this parole-eligibility/parole-determination distinction, both the Ninth and District of Columbia Circuits have.

### 3.  The Ninth and D.C. Circuit decisions on parole eligibility

In erroneously lumping together both Johnson's and Dotson's claims under the broad rubric of a challenge to "parole procedures," I believe that the majority has adopted a broad-based rule that was rejected by the Supreme Court in *Edwards*. A more narrow reading of *Anyanwutaku v. Moore*, 151 F.3d 1053 (D.C. Cir. 1998), analyzed in conjunction with two earlier Ninth Circuit cases, leads to what I believe is the proper rule in determining which parole challenges are cognizable in § 1983 actions.

One of these cases is *Neal v. Shimoda*, 131 F.3d 818 (9th Cir. 1997), where the Ninth Circuit held that parole-eligibility determinations are decisions that can be challenged in a § 1983 claim without running afoul of *Heck* and *Edwards*. Analogous to the case before us, *Neal* dealt with the retroactive application of a sex-offender statute that established new parole-eligibility guidelines after parole eligibility had already been determined for the two inmates in question. Following their convictions on charges of kidnapping, sexual assault, and attempted rape, Hawaii enacted the Sex Offender Treatment Program (SOTP). The program requires inmates categorized as sex offenders to participate in the program as a precondition to becoming eligible for parole. Because Neal's and Martinez's convictions took place before SOTP was instituted, the date of their parole eligibility had already been determined under older guidelines. *Id*. at 821-23.

The Ninth Circuit held that their action was cognizable under § 1983, employing the language quoted by both the

majority opinion here and the D.C. Circuit in *Anyanwutaku*: "The only benefit that a victory in this case would provide Neal and Martinez, besides the possibility of monetary damages, is a ticket to get in the door of the parole board, thus only making them *eligible* for parole consideration according to the terms of their sentences." *Id.* at 824 (emphasis in original). In other words, there was no determination to be unwound by the Parole Board in *Neal* because there had never been a decision on how much of the two inmates' sentences would be served. Deciding that a parole-eligibility statute should not be retroactively applied to them "would not alter the calculus for the review of parole requests in any way." *Id.* The decision in *Neal* did not necessarily imply the invalidity of any prior judgment because no parole decision was thrown out or altered by the court.

In reaching the decision in *Neal*, the Ninth Circuit distinguished one of its earlier cases that had applied the *Heck/Edwards* test. The earlier case was *Butterfield v. Bail*, 120 F.3d 1023 (9th Cir. 1997), which held that a prisoner's due process challenge under § 1983, attacking the procedures used by the Parole Board in denying him parole, was not sustainable. *Butterfield* closely tracked the reasoning of *Edwards* and held that "a challenge to the procedures used in the denial of parole necessarily implicates the validity of the denial of parole and, therefore, the prisoner's continuing confinement." *Id*. at 1024.

The differing outcomes in *Neal* and *Butterfield,* based upon the nature of the claims presented, is important because it parallels the distinction between the two cases at hand. Johnson, whose claim is discussed in Part II below, has challenged the procedures used in a hearing that denied him parole. Although he seeks to characterize his claim as one requesting that a future hearing by the Parole Board be untainted by procedural defects, he is necessarily implying the invalidity of the challenged hearing. Dotson, in contrast, does not challenge the procedures used in a hearing that denied him parole. Rather, like the plaintiffs in *Neal*, he challenges the

retroactive application of parole-eligibility guidelines to himself. I find this distinction as articulated by the Ninth Circuit to be persuasive.

*Anyanwutaku* also addresses a parole-eligibility situation and employs the reasoning of *Neal*. In *Anyanwutaku*, the D.C. Circuit held that the alleged miscalculation of a parole-eligibility date presented a cognizable § 1983 claim. The opinion, however, does not differentiate between a challenge to the procedures used in a particular parole hearing to deny parole versus the misapplication or retroactive application of generally applicable parole-eligibility guidelines. *Anyanwutaku* is instead based, like the majority opinion, on the rationale that a § 1983 claim is sustainable so long as the claim does not necessarily imply or automatically result in a speedier release from prison. *Anyanwutaku*, 151 F.3d at 1056.

Because *Anyanwutaku* dealt with the alleged misapplication of parole-eligibility guidelines, however, I do not disagree with the result reached in that case, even though I disagree with its rationale. I also believe that the Ninth Circuit's treatment of the issue is more instructive than that of *Anyanwutaku* because the *Neal* and *Butterfield* decisions explicate the key difference between a parole-eligibility challenge that attacks a generally applicable prison regulation versus an attempt to "set aside" or "reverse" the denial of parole in an individual case.

### 4. Parole-eligibility actions under § 1983 meet the Heck/Edwards *test*

I believe that the principles set forth in *Heck* and *Edwards*, as applied by the Ninth Circuit in *Neal* and *Butterfield*, provide a reasonable framework for analyzing Dotson's claim. The nature of Dotson's claim—an attack on the retroactive applicability of Ohio's statutory parole-eligibility scheme—does not necessarily imply the invalidity of any judgment by an administrative body that he is or is not

entitled to parole. In order to reach this conclusion, one simply needs to consider what will happen if Dotson's action is successful. *Heck*, 512 U.S. at 487 (noting that "if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed") (emphasis omitted). His scheduled 2005 parole hearing would proceed as planned, and nothing about the Parole Board's 1995 denial of his parole would change. A successful outcome would simply dictate that the 2005 hearing actually function as a real parole hearing, rather than as a rubberstamp denial rooted in the retroactive application of the current eligibility guidelines.

I believe that this is what is meant by the language "a ticket to get in the door of the parole board." *Neal*, 131 F.3d at 824. The Supreme Court has never addressed a situation like the one presented here, but its cases clearly indicate that there are some attacks on parole procedures that remain cognizable under § 1983. After all, the Court was very careful in *Heck* to distinguish *Wolff v. McDonnell,* 418 U.S. 539 (1974), a § 1983 class-action suit brought by prisoners challenging several of a Nebraska prison's administrative rules, practices, and procedures, on the following grounds:

> [W]e think [*Wolff*] recognized a § 1983 claim for using the wrong procedures, not for reaching the wrong result (*i.e.*, denying good-time credits). Nor is there any indication in the opinion, or any reason to believe, that using the wrong procedures necessarily vitiated the denial of good-time credits. Thus, the claim at issue in *Wolff* did *not* call into question the lawfulness of the plaintiff's continuing confinement.

*Heck*, 512 U.S. at 482-83 (emphasis in original).

Similarly, there is no indication that Dotson's claim, if allowed to proceed, would vitiate the earlier denial of parole. His appeal is a classic "claim for using the wrong procedures,

not for reaching the wrong result." *Id.* Further support for this conclusion comes from the fact that Dotson's lawsuit could just as easily have been cast as a class-action claim challenging the retroactive applicability of Ohio's parole-eligibility guidelines. This would have placed the case in the same posture as that presented in *Wolff,* requesting prospective injunctive relief that seems clearly permissible under the Supreme Court's rule.

Dotson's claim also brings to mind the examples of hypothetical Parole Board decisions rhetorically used by Johnson's lawyers in their Reply Brief to point out the need for the availability of § 1983 actions:

> Can the Ohio Parole Board determine that all white males who are eligible for parole release will have their release granted, while no one else can? Can the Board deny parole to all Hispanic inmates as a matter of policy? Can the Board flip a coin to determine who gets parole?

I think the answer to these questions is clearly no, with the examples illustrating why *all* § 1983 actions attacking a state's parole scheme are not subject to the habeas-corpus-exhaustion-of-state-remedies requirement. *See Preiser*, 411 U.S. at 494 (barring claims that sought the restoration of good-time credits under § 1983, but acknowledging a possible situation—an action for damages only—that "could be brought under the Civil Rights Act in federal court without any requirement of prior exhaustion of state remedies"). These actions would have no necessary bearing on a particular past judgment with regard to a prisoner, but they would ensure that the states are not violating prisoners' basic federal rights.

**5.** ***A proper application of the* Heck/Edwards *test coincides with the majority's decision on Dotson's claim***

The majority opinion purports to apply the *Heck/Edwards* test by simply giving Dotson and Johnson a "ticket to get in

the door of the parole board." However, the opinion overreaches when it suggests that, because Johnson's and Dotson's procedural challenges will result in nothing more than a new hearing, their claims must be allowed to proceed. (Maj. Op. at 14-15) This ruling is overbroad in light of the Supreme Court's holding in *Edwards,* which rejected the Ninth Circuit's decision based on that circuit's "precedent to the effect that a claim challenging only the procedures employed in a disciplinary hearing is always cognizable under § 1983." *Edwards*, 520 U.S. at 645. "That principle is incorrect, since it disregards the possibility, clearly envisioned by *Heck*, that the nature of the challenge to the procedures could be such as necessarily to imply the invalidity of the judgment." *Id*. In light of *Edwards*, I believe that the majority has erred in ruling that all attacks on parole procedures in Ohio that require a new hearing to correct are cognizable under § 1983.

That being said, I believe that the majority has reached the correct conclusion in allowing Dotson's claim to proceed under § 1983. I therefore concur in the result only.

## II. JOHNSON'S CLAIM

### A. Factual and procedural background

As indicated above, Johnson's claim involves very different facts from Dotson's. In Ohio, on or about the date of parole eligibility, the Parole Board must hold a hearing to determine whether the prisoner should be paroled. OHIO ADMIN. CODE § 5120:1-1-10. Recommendations for or against release can be made by "a panel consisting of one or more members of the Parole Board and one or more Parole Board hearing officers." *Id*. § 5120:1-1-11(C). At the hearing, the Parole Board (or the recommending panel) shall consider, among other things, "[w]ritten or oral statements by the inmate, other than grievances filed under rule 5120-9-31 of the Administrative Code." *Id*. § 5120:1-1-07(B)(7).

Johnson alleges that these procedures were not followed at his April 9, 1999 parole hearing when he was denied parole. He alleges that, in violation of Ohio Administrative Code § 5120:1-1-11(C), his hearing panel consisted of only one Parole Board hearing officer, rather than a panel consisting of at least one member of the Parole Board and at least one Parole Board hearing officer. Secondly, he alleges that, in violation of Ohio Administrative Code § 5120:1-1-07(B)(7), he was not allowed to speak on his own behalf or ask any questions. Finally, Johnson contends that the hearing panel's decision incorrectly relied upon two alleged convictions in his record for aggravated arson in deciding to deny his parole.

That last phrase—"deciding to deny his parole"—immediately indicates why Johnson's claim is different from Dotson's, and why it must be analyzed differently under *Heck* and *Edwards*. Johnson's § 1983 action was dismissed by the district court for failing to state a claim upon which relief can be granted. His counsel now argues on appeal that his claim is not barred by *Heck* because he "challenges only the procedures that were used at his parole hearing and seeks to have the hearing redone in a way that complies with the safeguards afforded him."

## B.   Analysis

In holding that Johnson can pursue his claim under § 1983, the majority opinion employs its "earlier-release" test to create a broad rule that allows § 1983 attacks on all discretionary Parole Board hearing procedures. As discussed above, this is impermissible under *Edwards*. Only if Johnson's claim were analogous to that in *Wolff* should he be allowed to pursue his action under § 1983.

*Wolff* was a class action that challenged the rules, practices, and procedures at a Nebraska prison complex. The plaintiffs, in their suit for damages, alleged that the policies of the prison administration were flawed as a whole, not as applied to any one inmate. *Wolff,* 418 U.S. at 553-54. This action

was held to be a cognizable § 1983 action and was later distinguished by the Supreme Court in *Heck* on the grounds quoted in the discussion of Dotson's claim under Part I above. Furthermore, the injunctive relief sought in *Wolff* was strictly prospective, and thus did not affect the validity of any judgment that had already occurred, even though the procedural changes sought by the plaintiffs would have clearly implied that past adjudications did not pass constitutional muster. *Id.* at 573.

If Johnson's complaint could be construed as a broadly conceived attack on the practices, policies, and procedures used by the Ohio parole authorities, then a plausible argument could be made that his claim, too, should proceed under § 1983. If Johnson had sought prospective relief only and did not necessarily suggest that the irregularities in his parole hearing were unique to him, then his action would not affect the validity of any judgment that had already occurred, even though the procedural changes sought would imply that the past adjudication did not pass constitutional muster.

But this characterization is not a valid one for Johnson's claim. Although Johnson's pro se complaint itself is ambiguous, his attorneys on appeal have clearly stated that he wants to have his hearing "redone." In other words, he seeks to have this court throw out the previous Parole Board's determination that denied him parole. Johnson cannot possibly be making a *Wolff*-type claim based on the relief he seeks. Furthermore, the procedural irregularities that he complains about are not problems with the practices of the Ohio Parole Board as a whole; they are deviations from the Administrative Code that allegedly took place in Johnson's hearing. For these reasons, there is no way to characterize the nature of Johnson's challenge as anything other than a claim that necessarily implies the invalidity of a prior state judgment. As discussed above, it is not the fact of the prisoner's incarceration that is the concern, it is the very judgment of the state—administrative or judicial—whose invalidity may not be implied by a § 1983 claim.

I thus conclude that the majority has reached the wrong result in Johnson's appeal. It has done so by allowing § 1983 to be used as a vehicle for all procedural attacks on Parole Board proceedings that result in a new hearing, a result that is contrary to Supreme Court precedent. I therefore respectfully dissent from the result reached on Johnson's claim.

### III. CONCLUSION

I disagree with the majority's conclusion that a "successful challenge will only 'necessarily imply' the invalidity of a prisoner's conviction or confinement if it will inevitably or automatically result in earlier release." (Maj. Op. at 13) Rather, the issue is whether the nature of the claims of the individual prisoners necessarily implies the invalidity of their underlying convictions or sentences. Because Dotson presents what amounts to a prospective attack on the retroactive applicability of Ohio's parole-eligibility guidelines, I believe that he has a cognizable § 1983 claim. Johnson, on the other hand, attacks the procedures used in a previous hearing that denied him parole, and asks that his hearing be "redone." Vacating the old hearing and ordering the Ohio Parole Board to provide Johnson with a new error-free hearing is the very type of attack on an underlying sentence that *Heck* and *Edwards* expressly prohibit. Johnson's challenge instead requires the exhaustion of state remedies and, if necessary, a petition for habeas corpus relief. *Heck*, 512 U.S. at 481. I therefore concur in the result reached on Dotson's claim and respectfully dissent with regard to Johnson's.