RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0108p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

DARRYL M DURR,

               *Plaintiff-Appellant,*

    *v.*

RICHARD CORDRAY, et al.,

               *Defendants-Appellees.*

Nos. 10-3463/3466

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 10-00312—George C. Smith, District Judge.

Submitted: April 17, 2010

Decided and Filed: April 18, 2010

Before: BATCHELDER, Chief Judge; SUHRHEINRICH and COLE, Circuit Judges.

———————————

SUHRHEINRICH, J., delivered the opinion of the court, in which BATCHELDER, C.J., joined. COLE, J., concurs in the result only.

———————————

## OPINION

———————————

SUHRHEINRICH, Circuit Judge. Darryl Durr, an Ohio death row inmate, filed a civil rights action under 42 U.S.C. § 1983 challenging the State of Ohio's denial of access to certain physical evidence for purposes of DNA testing. Durr is scheduled to be executed on April 20, 2010. On April 16, 2010, the district court deemed the action a second or successive habeas petition under 28 U.S.C. § 2244(b)(3)(A) and transferred it to this Court for consideration. Alternatively, the district court denied Durr's motion for a temporary restraining order and preliminary injunction staying his execution upon concluding that none of Durr's claims had a likelihood of success on the merits.

1

We hold that the district court erred in deeming this action a second or successive petition. However, we nonetheless deny Durr's motion for a temporary restraining order or a preliminary injunction staying his execution, albeit on different grounds from those stated by the district court — we find that even if Durr were to prevail on his § 1983 claims, he would not be entitled to this remedy.

**I.**

A 16-year-old girl named Angel Vincent disappeared on or about January 31, 1988. On April 30, 1988, the body of a young white female, "in an advanced state of decomposition," was found in Brookside Park in Cleveland, Ohio, and an autopsy was performed:

> A deputy coroner testified that the only clothing found on the victim was a pink sweater and a pair of white tennis shoes. The pink sweater had been pushed up well above the victim's breast area. An initial external examination determined the body to be that of a young white female, who was in an advanced state of decomposition. The body was heavily infested with maggots and the body's eyes and ears had been lost. There was also prominent evidence of animal activity about the inguinal and vulval regions of the body, and in and about the thighs. According to the deputy coroner, the decomposition was consistent with three months exposure.

> After examining the body, the deputy coroner concluded that the cause of death was homicidal violence. Since the body was so badly decomposed, the deputy coroner could not determine whether ligature marks, scrapes or tears indicating strangulation were present. There was no damage noted to the internal cartilaginous structures of the neck. The deputy coroner declined, however, to rule out strangulation as a cause of death since damage to these structures is not always present in young strangulation victims due to the flexibility of these structures. In addition, because the body was so severely infested with bacteria, testing for the presence of acid phosphates and spermatozoa was inconclusive.

*Ohio v. Durr*, 568 N.E.2d 674, 677 (Ohio 1991).

In September 1988, Deborah Mullins, a former girlfriend of Durr's, told the police that Durr had murdered Angel Vincent. The State indicted Durr and a jury convicted him of aggravated murder, in violation of Ohio Rev. Code § 2903.01; kidnapping, in violation of § 2905.01; aggravated robbery, in violation of § 2911.01; and rape, in violation of § 2907.02. The trial court sentenced Durr to death. The state courts affirmed Durr's

conviction and sentence on direct appeal and denied Durr's state post-conviction appeals.[1] Durr sought and was denied federal habeas relief. *See Durr v. Mitchell*, 487 F.3d 423 (6th Cir. 2007), *cert. denied*, 552 U.S. 1261 (2008).

On August 6, 2009, Durr filed an application for DNA testing pursuant to Ohio Revised Code section 2953.71 *et seq.* in the state trial court. The State agreed to test any DNA from oral, rectal, and vaginal smears taken from the victim at the autopsy, and the court ordered the testing. On September 23, 2009, the lab issued a final report on the DNA testing of these samples, in which it reported that there was no DNA present on which DNA analysis could be conducted.

However, the State objected to the DNA testing of the victim's necklace, arguing that it was subject to possible contamination and any results would be inconclusive. The court held an evidentiary hearing on October 5, 2009, to decide if the necklace should also be subject to DNA testing. The State presented two witnesses. Frank Kost, Cuyahoga County Deputy Clerk of Courts, testified that he is the supervisor of an area known as the "dead files" storage room, where transcripts and trial exhibits are stored after an appeal. Kost testified that transcripts and trial exhibits are a public record, and may be examined by lawyers and the public. Kost further testified that the necklace was stored in an unsealed envelope. Dr. Linda Benzinger, a DNA Quality Assurance Administrator, also testified for the state. Both parties stipulated that she is an expert in the field of forensic DNA analysis. Benzinger stated that she was familiar with Ohio's legal requirements for post-conviction DNA testing. Benzinger testified that because "the body of Angel Vincent . . . was somewhat decomposed" she "wouldn't expect to find DNA that would have been applied during the offense . . . because the bacteria and fungi from that decomposed body would have destroyed that DNA as well." She added that "[i]t's telling that the vaginal, anal and oral samples, no DNA at all was obtained from those. We went ahead and tested for Y-STR's, but the quantity testing showed us that not even any DNA from the victim was obtained." She also testified that, given the

---

[1]For a detailed procedural history of Durr's state criminal action, *see Durr v. Mitchell*, 487 F.3d 423 (6th Cir. 2007), *reh'g and reh'g en banc denied* (Sept. 7, 2007), *cert. denied*, 128 S. Ct. 1652 (2008).

nature of its storage, the necklace could contain the DNA of anyone who had recently come into contact with it.  So, Benzinger explained: given that the necklace was on the victim's decomposing body for three months, it was unsuitable for DNA testing; and given the unpreserved state of the necklace in storage and the lack of chain of custody, any DNA results would be wholly unreliable.  Durr did not call any witnesses at the hearing.  On October 6, 2009, the state trial court found that "based upon the testimony presented at the evidentiary hearing, there is reason to believe that the evidence has been out of the State's custody and/or been contaminated since its collection during its storage in Dead Files."

On November 20, 2009, Durr sought leave of the Ohio Supreme Court to appeal the trial court's decision.  The Ohio Supreme Court denied Durr's request on April 10, 2010.  On April 13, 2010, Durr filed this § 1983 action in federal district court, seeking a temporary restraining order, preliminary injunction, permanent injunction, and declaratory judgment.  In his complaint, Durr claimed that the State's refusal to release the necklace for testing deprived him of due process and constituted cruel and unusual punishment under the Eighth Amendment.  He also claimed that Ohio Rev. Code § 2953.73(E)(1) is facially unconstitutional under the Equal Protection Clause because it gives noncapital defendants a mandatory right of appeal to the Ohio Court of Appeals with discretionary review by the Ohio Supreme Court, but gives capital defendants no appeal as of right in either court and only discretionary review  in the Ohio Supreme Court.  Durr further claimed that Ohio Rev. Code § 2953.73 (E)(1) violated the Ex Post Facto Clause of the United States Constitution and the Retroactivity Clause of the Ohio Constitution.  Durr also claimed that the statute violated the Ohio Constitution, Article IV, §3(B)(2), conferring jurisdiction on the courts of appeal.  Lastly, Durr raised an as-applied challenge to the statute.

On April 16, 2010, the district court ruled that because the underlying purpose of Durr's § 1983 action was to challenge the validity of his conviction or death sentence his only avenue of relief was habeas.  Given that Durr had already pursued and exhausted federal habeas corpus relief pursuant to 28 U.S.C. § 2254, the district court

concluded that it lacked jurisdiction absent an order from this Court authorizing a second or successive petition. *See* 28 U.S.C. § 2244(b)(3)(A). Because Durr had not obtained such an order, the district court transferred the case to this court. *See In re Sims*, 111 F. 3d 45, 47 (6th Cir. 1997) (per curiam).

The district court also ruled in the alternative. Assuming Durr's action to be properly before it pursuant to § 1983, the district court denied injunctive relief that would have stayed Durr's scheduled execution. The district court held that none of Durr's claims had a likelihood of success on the merits. The district court held that Durr's claim of denial of access to evidence was barred by the *Rooker-Feldman* doctrine. The district court concluded that Durr's equal protection claim could not succeed because Ohio's one-tier system of appellate review has been upheld in the context of direct appeals. *See Smith v. Mitchell*, 567 F.3d 246 (6th Cir. 2009) (upholding on habeas review, the Ohio Supreme Court's determination that its one-tier system of direct review of capital convictions and sentences does not violate the Equal Protection Clause). The district court rejected Durr's substantive due process claim, also on the basis of *Smith*, and held that Durr's Eighth Amendment challenge failed because the state has discretion to allow appellate review, so long as its system is consistent with due process and equal protection, and Ohio's option of a discretionary appeal to the Ohio Supreme Court met that requirement. The district court rejected Durr's ex post facto and retroactivity claims because the right to DNA testing was not available at the time of his 1988 conviction. The court rejected the divestment of jurisdiction argument on state law grounds. Finally, the court found that Durr's as-applied challenge failed for the same reasons as his equal protection, Eighth Amendment, and due process claims.

The district court agreed that Durr would be irreparably harmed absent the stay, but found that the State is harmed when the execution of valid criminal judgment is delayed. As for the public interest, the court found that the public interest in this case would be best served "by deferring to [the State's] efforts to ensure the integrity of the criminal justice system because [Durr] ha[d] not carried his burden of demonstrating

constitutional inadequacies in Ohio's DNA testing law." On balance then, the district court concluded injunctive relief was not warranted.

Durr now appeals to this Court.

## II.

First we consider whether it was proper for the district court to treat Durr's action as a second or successive habeas petition rather than as a § 1983 action. Although most habeas corpus challenges will also, prima facie, state a claim under the plain language of § 1983, the Supreme Court has created an implied exception to § 1983's broad scope for cases that lie "within the core of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973). The Supreme Court has explored the relationship between the two statutes in a series of cases. *See Preiser,* 411 U.S. 475 (holding that state prisoners' challenges to the constitutionality of prison disciplinary proceedings that led to the deprivation of good-time credits fell within the core of habeas); *Wolff v. McDonnell*, 418 U.S. 539 (1974) (holding that state prisoners' challenges to revocation of their good-time credits through disciplinary proceedings could be brought as a § 1983 action because inmates sought only a declaration that the disciplinary proceedings were invalid and thus attacked only wrong procedures and not wrong result); *Heck v. Humphrey*, 512 U.S. 477 (1994) (affirming state courts' dismissal of a prisoner's § 1983 damages suit against prosecutors and police investigator based on an allegedly unlawful investigation leading to his arrest while state-court conviction was pending because a favorable judgment would necessarily imply the invalidity of his conviction); *Edwards v. Balisock*, 520 U.S. 641 (1997) (holding that habeas was the sole vehicle for an inmate's constitutional challenge to procedures employed by state officials to deprive him of good-time credits); *Wilkinson v. Dotson*, 544 U.S. 74, 81-92 (2005) (finding that inmates' suit challenging the constitutionality of applying new parole guidelines to their parole proceedings was proper under § 1983 because the relief sought would merely render invalid state procedures used to deny parole eligibility which meant at most a speedier consideration of a new parole application and neither inmate sought an injunction ordering a speedier release).

In finding Durr's claim a second or successive habeas petition, the district court relied on *Boyle v. Mayer*, 46 F. App'x 340, 340 (6th Cir. 2002) (decided without argument pursuant to Sixth Cir. R. 34(j)(1)), an unpublished, two-page opinion in which we held that the plaintiff/prisoner's request for DNA testing was not cognizable under § 1983, but was rather a habeas claim because it "plainly challenged the validity of his criminal convictions and the fact or duration of his continued confinement." A review of *Boyle* reveals that it engaged in only limited analysis and did not discuss the sharp circuit split that existed on this issue at that time.

In *Dotson v. Wilkinson*, 329 F.3d 463 (6th Cir. 2003) (en banc), we rejected similar reasoning, holding instead that "procedural challenges to parole eligibility and parole suitability determinations . . . do not 'necessarily imply' the invalidity of the prisoner's conviction or sentence and, therefore, may appropriately be brought as civil rights actions, under 42 U.S.C. § 1983, rather than pursuant to an application for habeas corpus." *Id.* at 472 (overruling any prior opinions to the extent they conflicted with the reasoning therein). Given our holding in *Dotson* and that the Supreme Court ultimately affirmed our decision, *see Wilkinson*, 544 U.S. at 85, we decline to credit *Boyle* with any persuasive value and reject the district court's reliance upon it. The question of whether a challenge to the State's denial of a plaintiff/prisoner's request for evidence for DNA testing may be brought under § 1983 (rather than habeas) is an open question in this court.

And, as mentioned above, there is a circuit split on this question. Prior to the Supreme Court decision in *Wilkinson*, two courts of appeals had held that such suits could only be brought under § 2254, *see Kutzner v. Montgomery County*, 303 F.3d 339 (5th Cir. 2009) (per curiam); *Harvey v. Horan*, 278 F.3d 370 (4th Cir. 2002), whereas the Eleventh Circuit had held that suits seeking access to evidence for DNA testing could be brought pursuant to § 1983, *see Bradley v. Pryor*, 305 F.3d 1287, 1290 (11th Cir. 2002). Following *Wilkinson*, however, "[e]very Court of Appeals to consider the question since *Dotson* has decided that because access to DNA evidence [] does not 'necessarily spell speedier release,' it can be brought under § 1983." *Third Judicial Dist.*

*v. Osborne*, 129 S. Ct. 2308, 2318 (2009) (quoting *Wilkinson*, 544 U.S. at 1242); *Grier v. Klem*, 591 F.3d 672, 677 (3rd Cir. 2010). *See also Savory v. Lyons*, 469 F.3d 667, 671 (7th Cir. 2006); *McKithen v. Brown*, 481 F.3d 89, 99 (2d Cir. 2007). As explained by the Ninth Circuit in the case leading to the Supreme Court decision,

> It is clear to us, as a matter of logic, that success in such an action would not necessarily demonstrate the invalidity of confinement or its duration.
>
> First, success would yield only access to the evidence-nothing more.
>
> Second, further DNA analysis may prove exculpatory, inculpatory, or inconclusive; thus, there is a significant chance that the results will either confirm or have no effect on the validity of Osborne's confinement.
>
> And third, even if the results exonerate Osborne, a separate action-alleging a separate constitutional violation altogether-would be required to overturn his conviction.

*Osborne v. Dist. Attorney's Office for the Third Judicial Dist.*, 423 F.3d 1050, 1054-55 (9th Cir. 2005) (quotation marks and citations omitted; paragraph breaks inserted). We are persuaded by this reasoning and conclude that Durr's request to seek DNA evidence was cognizable under § 1983.

But we find that we cannot grant Durr a stay of his execution for these very same reasons: success on his claim would do no more than yield access to the evidence, it would have no direct effect on the validity of his conviction or death sentence, and he would have to bring another, separate action in order to even challenge the conviction or sentence. That is, *even if* Durr were to prevail on his § 1983 action (and obtain the necklace for DNA testing), success in that action would not directly invalidate or undermine his conviction or sentence. Consequently, there is no nexus between the merits of Durr's underlying claim and his pending execution, so this claim — no matter its merit — cannot justify our interference with the State's enforcement of an otherwise uncontested judgment of conviction and sentence.

We have stated the factors for determining whether to grant a stay of execution as: "(1) whether there is a likelihood [the prisoner] will succeed on the merits of the appeal; (2) whether there is a likelihood he will suffer irreparable harm absent a stay; (3)

whether the stay will cause substantial harm to others; and (4) whether the injunction would serve the public interest." *Workman v. Bell*, 484 F.3d 837, 839 (6th Cir. 2007); *see also Cooey v. Strickland*, 589 F.3d 210 (6th Cir. 2009); *Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir.2007). But the necessary implication of these cases is that this first factor — the likelihood of success on the merits — concerns the merits of his direct challenge to his conviction or sentence (on direct appeal or via habeas); that is, the likelihood that he will be able to invalidate or undermine his conviction or sentence by prevailing on the merits. This factor most certainly does not concern the merits of an entirely separate lawsuit. And that, by his own account, is all that Durr has here: an entirely separate lawsuit, in which he does not seek to invalidate or undermine his conviction or death sentence. *See* Motion of Apt. Darryl Durr for Stay of Execution at *17 (Apr. 17, 2010) ("Success in his § 1983 case would *not* demonstrate that his confinement or impending execution was improper or even questionable.").

Finally, it warrants mentioning that, even if we were to construe this claim as a habeas petition — a second and successive habeas petition in this circumstance — Durr cannot prevail because he cannot satisfy the criteria of 22 U.S.C. § 2244(b)(2). Under this provision, this Court may authorize a petitioner to bring a claim not presented in the prior habeas petition if: (A) "the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable"; or (B) "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2244(b)(2). Given that Durr raises a claim only under part B, this court may authorize the petition only "if it determines that the application makes a prima facie showing that the application satisfies the requirements." 28 U.S.C. § 2244(b)(3)(C). "'Prima facie' in this context means simply sufficient allegations of fact together with some documentation that would warrant a fuller exploration in the

district court." *In re Lott*, 366 F.3d 431, 433 (6th Cir. 2004) (quotation marks and citation omitted).

So, as a second or successive habeas, Durr's claim fails on multiple levels. Durr does not contend — nor could he — that his claim rests on a new rule of constitutional law. Durr contends that his constitutional rights were violated when the State refused to provide him with the necklace so that he could test it for DNA, and again when he was denied appeal as of right on that decision. Even if we were to accept Durr's claim that he could not have obtained this evidence any earlier than 2009 (upon conclusion of the initial habeas review and not 2003 when the Ohio Rev. Code § § 2953.73(E)(1) was enacted), we still could not find that he is entitled to relief because he has presented no "documentation" to support his bald assertion that the DNA results from testing the necklace would have been helpful, much less to support a claim of actual innocence. Moreover, by Durr's own admission, these particular constitutional claims of error do not, by themselves, raise any question about the validity of his conviction or death sentence.

**III.**

Based on the foregoing, we hold that Durr has stated claims that are cognizable under § 1983 but conclude that even if Durr were to succeed on those claims, such success would not entitled him to a stay of his execution. Therefore, we AFFIRM the district court's order denying Durr a temporary restraining order or a preliminary injunction.

Judge Cole concurs in the result only.